COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
LEONARD Z. KAUFMANN
Park 80 Plaza West-One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663
201-845-9600
lzk@njlawfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUN YIN and XINQUAN LIU, and on behalf of themselves and others similarly situated,, <br><br> Plaintiffs, <br><br> -against- <br><br> HANAMI WESTWOOD, INC. d/b/a HANAMI RESTAURANT, HANAMI CRESSKILL, INC. d/b/a HANAMI RESTAURANT, ERIC CHEN and SAM LINDER <br><br> Defendants. | Case No.:  14-00809(JMV)(MF) |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

PROCEDURAL HISTORY......................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

    I.  FACTS RELATED TO PLAINTIFF YIN ................................................................2
        A.  Yin Concedes He Has No Evidence to Support His Claim ..................................2
        B.  Yin's Inconsistent Statements as to the Hours He Worked ...................................3
        C.  Yin's Rate of Pay ....................................................................................................5

    II.  FACTS RELATED TO PLAINTIFF LIU ................................................................6
        A.  Liu Concedes That He has No Evidence to Support His Claims...........................6
        B.  Liu's Inconsistent Statements on Hours Worked...................................................7
        C.  Liu's Rate of Pay ....................................................................................................9

LEGAL ARGUMENT ..............................................................................................................9

POINT I – THE STANDARD FOR SUMMARY JUDGMENT ......................................9

POINT II – THERE IS NO VIOLATION OF THE FAIR LABOR STANDARDS ACT ...........10
    A.  The Applicable Statute of Limitations ..................................................................10
        1.  Plaintiffs' claim is subject to a two year limitation ...............................10
        2.  The relevant time period is two years prior to March 17, 2015.............11
    B.  Since Plaintiffs Were Paid More Than Their Minimum Wage,
        There is No FLSA Violation..................................................................13
        1.  Yin was paid properly...............................................................14
        2.  Liu was paid the appropriate amount.....................................................15

POINT III – THERE IS NO VIOLATION OF THE NEW JERSEY WAGE
        AND HOUR LAW ..........................................................................15

CONCLUSION.......................................................................................................................16

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Adair v. City of Kirkland,*
    185 F.3d 1055 (9th Cir. 1999) ...............................................................................................14

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)................................................................................................................10

*Blankenship v. Thurston Motorlines Inc.,*
    415 F.2d 1193 (4th Cir. 1969) ................................................................................................14

*Bonilla v. Las Vegas Cigar Companies*,
    61 F.Supp.2d 1129 (D. Neb. 1999)........................................................................................12

*Brock v. Richland Shoe Company*,
    799 F.2d 80 (3d Cir. 1986).....................................................................................................10

*Celotex v. Catrett*,
    477 U.S. 317 (1986)............................................................................................................9, 10

*Chavarriaga v. New Jersey Dept. of Corrections*,
    806 F.3d 210 (3d Cir. 2015)...................................................................................................10

*Dove v. Coupe*,
    759 F.2d 167 (D.C. Cir. 1985)...............................................................................................14

*Ochoa v. Pearson, DDUC Inc.,*
    2012 WL95340 (D.N.J. Jan. 12, 2012) .................................................................................11

*Frye v. Baptist Memorial Hosp. Inc.,*
    495 F.App'x 669 (6th Cir. 2012) ...........................................................................................12

*Gessele v. Jack-in-the-Box Inc.,*
    2014 WL1094949 (D. Orl. March 19, 2014) ........................................................................12

*GFL Advantage Fund, Ltd. v. Colkitt*,
    272 F.3d 189 (3d Cir. 2001)...................................................................................................10

*Harkins v. River Boat Services, Inc.,*
    385 F.3d 1099 (7th Cir. 2004) ...............................................................................................12

*Hart v. Crab Addison, Inc.,*
    2014 WL2865899 (W.D.N.Y. June 24, 2014) ......................................................................13

# TABLE OF AUTHORITIES (cont.)

**Page**

**CASES (cont.)**

*Hensley v. MacMillan Bloedel Containers, Inc.,*
    786 F.2d 353 (8th Cir. 1986) ...............................................................................14

*Matsushita Elc. Indus. Co. Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)..............................................................................................10

*Matuska v. NMTC, Inc.,*
    2012 WL1533779 (D.N.J. April 30, 2012).........................................................12

*Mclaughlin v. Richland Shoe Company*,
    486 U.S. 128 (1988)..............................................................................................10

*Schaefer v. P.F. Change China Bistro, Inc.,*
    2014 WL3809069 (D. Ariz. Aug. 1, 2014)..........................................................13

*U.S. Dept. of Labor v. Cole Enterprises, Inc.,*
    62 F.3d 775 (6th Cir. 1995) ..................................................................................14

*United States v. Klinghoffer Brothers Realty Corp.,*
    285 F.2d 487 (2nd Cir. 1961)................................................................................13

*Willis v. UPMC Children's Hospital of Pittsburgh*,
    808 F.3d 638 (3d Cir. 2015)...................................................................................9

**RULES/STATUTES**

29 U.S.C. §201....................................................................................................................10
29 U.S.C. §206(a) ...............................................................................................................13
29 U.S.C. §216(b) ...............................................................................................................11

C.F.R. §776.4.....................................................................................................................13

Fed. R. Civ. P. 56(a) ............................................................................................................9

N.J.S.A. 34:11-56(a) ..........................................................................................................15
N.J.S.A. 34:11-56(a)(4) .....................................................................................................15

**PRELIMINARY STATEMENT**

Since plaintiffs were paid more than the minimum wage, including overtime, there is no legal or factual support for their allegation of violations of federal or state wage laws. Plaintiffs admit that they have no documents to support their allegations, and no facts to contradict defendants' contemporaneous record of hours worked and compensation paid. These records demonstrate plaintiffs were paid properly.

Discovery is finished. By now, plaintiffs have the obligation to come forth with actual, admissible evidence that could prove their case. But they have nothing more than the mere allegations of their complaint. There are no supporting documents. Plaintiffs have even disavowed the damages calculation furnished in discovery.

Plaintiffs cannot meet their burden to come forth with evidence sufficient to prove the causes of action pled. There is no reason for this litigation to continue. Summary judgment is mandated.

**PROCEDURAL HISTORY**

Plaintiff Jun J. Yin ("Yin") and Xinquan Liu ("Liu") commenced the litigation with the filing of their complaint on February 7, 2014 (ECF#1). Named as defendants were Hanami Cresskill, Inc. ("Cresskill") and Hanami Westwood Inc, ("Westwood") – two Chinese restaurants (collectively "Hanami"). Also named were Sam Linder ("Linder") and Eric Chen ("Chen"). Plaintiffs voluntarily dismissed the complaint against Linder with prejudice (ECF#73). Eric Chen has since filed for protection under the bankruptcy laws and is no longer involved in this case.

By leave of Court an Amended Complaint was filed on August 7, 2014 (ECF#28).

The matter was referred to mediation on January 16, 2015 (ECF#53) with Sheryl Manson Goski, Esq. as the court appointed mediator. The mediation was unsuccessful. Numerous settlement conferences have been held by United States Magistrate Judge Mark Falk.

Yin and Liu did not file their certifications to become party plaintiffs until March 17, 2015 (ECF#55).

Plaintiffs initially filed a motion to certify a class on June 30, 2014 (ECF#19); it was refiled on June 12, 2015 (ECF#64). On January 21, 2016 the Honorable Claire C. Cecchi, U.S.D.J. granted the motion in part and denied it in part. (ECF# 88). On March 29, 2016 U.S.M.J. Falk granted defendants permission to file the within summary judgment motion. (ECF#97).

## STATEMENT OF FACTS

Defendants Hanami Cresskill and Hanami Westwood are Chinese restaurants located in Westwood and Cresskill New Jersey respectively. At all times relevant each had a sign posted related to wages and tips in compliance with guidance from the United States Department of Labor (Exhibit "A" Documents Bates stamped Hanami 00032 and 000333).[1]

### I. FACTS RELATED TO PLAINTIFF YIN

#### A. **Yin Concedes He Has No Evidence To Support His Claim**.

Yin worked as a delivery person at Cresskill from March 10, 2005 to September 2005. He was employed as a delivery person at Westwood from September 2009 to April 15, 2013 (Yin Answers to Interrogatory #3 - Exhibit "B").[2]

---

[1] All exhibits are attached to the April 21, 2016 Certification of Leonard Z. Kaufmann, Esq.

[2] Although defendants served separate Interrogatories and Requests to Produce on each plaintiff, plaintiffs chose to respond in a single document for both plaintiffs on August 8, 2014. Plaintiffs supplemented their answer on August 25, 2014, and again on November 7, 2014. For the Court's convenience, the responses are included together as Exhibit "B" to the Kaufmann Certification.

2

In responses to discovery and at his deposition Yin conceded the following facts:

- He has no information in support of his allegations that Hanami has a policy of not paying overtime. (Yin Dep. 42:2-5).[3]

- He has no facts to support allegations that Hanami did not accurately record the hours he worked. (Yin Dep. 58:18-22).

- He has no facts to support allegations that Hanami did not accurately record his tips. (Yin Dep. 69:9-13).

- He is not aware of any documents that support the allegations of the complaint. (Yin Dep. 77:23-78:13)

Yin see also conceded in his discovery responses that he had no documents to support his claim. (Yin answers to Interrogatory #8 – Ex. "B")

### B. Yin's Inconsistent Statements As to the Hours He Worked.

The actual hours worked are critical to the proper resolution of this litigation. It is axiomatic that Yin must prove how many hours he worked in order to prove his allegations that he was not paid the proper amount. Yet Yin can't seem to get his story straight.

In the complaint, Yin alleges that he worked 11 hours per day on Sunday, Monday, Wednesday and Thursday, and 12 hours on Friday and Saturday. He claims this totals 69 hours per week, although the math actually adds up to only 68 hours. In the complaint, Yin does not account for any vacation or sick days. (Am. Compl. ¶23).

---

[3] Deposition excerpts are attached to the Kaufmann Certification as follows:
 Exhibit "C" thereto is the August 13, 2015 deposition of Jun Yin, cited as "Yin Dep."
 Exhibit "D" thereto is the August 13, 2015 deposition of Xinquan Liu, cited as "Liu Dep."
 Exhibit "F" thereto is the August 12, 2015 deposition of Eric Chen, cited as "Chen Dep."

3

Yin submitted an affidavit in support of his motion on class certification. (Exhibit "E"). In that affidavit he stated that he worked "approximately 69 hours every week." (Yin Affidavit ¶8) (emphasis added). He had no specifics as to how those approximate hours were calculated and which weeks he worked other than exactly 69 hours, as he had initially claimed in his complaint.

Yin's responses to interrogatories claimed a different work schedule. In response to Interrogatory #3, Yin certified that he worked from 10:45 a.m. to 10:00 p.m. on Monday, Wednesday and Thursday, 3:30 p.m. to 11:00 p.m. on Friday, 10:00 [a.m.] to 11:00 p.m. on Saturday, and 11:00 a.m. to 9:30 p.m. on Sunday. He claims this equals a total of 63 hours per week, although the stated hours actually total 64.75 hours. Again, Yin does not account for any vacation or sick days. (Response to Interrogatory #3 – Exhibit "B")

The damages calculation attached to Yin's interrogatory response sets forth yet another version of the hours worked. (Exhibit 1 to August 25, 2015 Supplemental Interrogatory Response - Exhibit "B"). Here, he claims that he worked 10:00 a.m. to 10:00 p.m. on Sunday, Monday, Wednesday and Thursday, with one hour off on Monday, Wednesday and Thursday. He also claims that he worked 10:00 a.m. to 11:00 p.m. on Friday and Saturday with one hour off. This totals 69 hours. It does not account for vacation or sick days.

At his deposition, Yin had several more versions of his work schedule. In all of these versions, Yin admits that he included at least one hour for commuting. (Yin Dep. 37:16-21). Early in the deposition, Yin said he worked 11 hours every Sunday, Monday, Wednesday and Thursday (Yin Dep. 37:12-15). Then he changed that to 11.75 hours on Monday, Wednesday and Thursday and 10.75 hours on Sunday. (Yin Dep. 38:1-25). He also claimed Friday's hours were 3:30 p.m. to 11:00 p.m. and Saturday he worked 11:00 a.m. to 11:00 p.m. (Yin Dep. 39:20-41:4). He admitted to one week of vacation per year and incredibly stated that he was never sick. (Yin Dep. 39:3-16).

4

The following chart shows the different versions of Yin's statements and sworn testimony related to the hours he worked.

|  | MONDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY | SUNDAY |
|---|---|---|---|---|---|---|
| **COMPLAINT** | 11 | 11 | 11 | 12 | 12 | 11 |
| **INTERROGATORY ANSWERS** | 11.75 | 11.75 | 11.75 | 7.5 | 13 | 10.5 |
| **DAMAGES STATEMENT** | 11 | 11 | 11 | 12 | 12 | 12 |
| **DEPOSITION VERSION #1** | 11 | 11 | 11 | 7.5 | 12 | 11 |
| **DEPOSITION VERSION #2** | 11.75 | 11.75 | 11.75 | 7.5 | 12 | 10.75 |

As stated above, Yin has no documentation or records to support any of the varied versions of how many hours he actually worked.

In contrast, defendant kept accurate contemporaneous records of the hours worked. (Westwood Answers to Interrogatory #9, see bates stamped documents Hanami 0003-23 - Exhibit "A"). This demonstrates that the hours Yin worked varied from week to week. Eric Chen, the manager of the two restaurants at the time, testified that each restaurant was open from 11:00 a.m. to 9:45 p.m. Monday through Thursday, 11:00 a.m. to 10:45 p.m. Friday and Saturday and 12:00 p.m. to 9:30 p.m. on Sunday. (Chen Dep. 15:14-16:5). The restaurant was closed one hour in the afternoon each day (Chen Dep. 17:5-9). The maximum Yin could have worked, even using his methodology of no break and no sick days, is 55 hours per week.

### C. Yin's Rate of Pay.

Yin has the same inconsistency with regard to his rate of pay as he does concerning his hours worked. And, as with the hours worked, Yin admits that he has no records to document how much he was actually paid.

5

In the complaint, Yin alleges that he was paid $1500.00 every two weeks (Am. Compl. ¶29). In the sworn affidavit in support of the class certification motion, he claims he was paid $1500.00 per month (Exhibit "E" ¶10). At his deposition, he first testified that he was paid $1400.00 per month (Yin Dep. 41:10-12), then later said it was $750.00 for half a month (Yin Dep. 41:24-25), and then changed that to $750.00 every two weeks. (Yin Dep. 44:18-20). His damages calculation states that he was paid $750.00 every two weeks. (Exhibit "B").

Yin admits that he did not include the tips he received in any of these allegations with regards to compensation. He did concede that he received tips, all of which he kept. (Yin Dep. 34:10-23). In contrast, the tips of which Westwood had knowledge were recorded by Westwood, and Yin concedes that he has no facts to support a challenge to those records. (Yin Dep. 69:9-13). Westwood's records probably under-report the amount of tips, since Yin himself hid the actual amount from his employer. (Yin Dep. 63:22-64:21).

## II.   FACTS RELATED TO PLAINTIFF LIU

### A.   Liu Concedes That He Has No Evidence to Support His Claims.

Liu worked as a waiter at Westwood from January 1, 2012 to June 16, 2012. He was a waiter at Cresskill from February 1, 2011 to December 31, 2011 and from September 7, 2013 to September 15, 2013 (Exhibit "B" -Liu Answer to Interrogatory #3, see also, Liu Dep. 11:2-7).

Like Yin, Liu admits that he has no evidence in support of his allegations.

- He has no records to indicate whether or not he worked on any particular day and how many hours he worked on any particular day. (Liu Dep. 23:20-25:21).

- He did not report the actual amount of his tips to anyone. (Liu Dep. 27:25).

- He did not keep any records of his tips. (Liu Dep. 28:21; 31:10-32:3).

- He currently has no documentation as to the amount of tips received. (Liu Dep. 33:24-34:8).

6

- He has no knowledge of any facts to support an allegation that Hanami did not pay minimum wage. (Liu Dep. 35:19-36:20).

- When asked for specific facts to support his allegations that Hanami did not pay one-and-a-half times minimum wage for overtime, he had no such facts. (Liu Dep. 38:3-23).

- He had no facts to support the allegation that the restaurant did not accurately record the number of hours he worked. (Liu Dep. 46:25-49:2).

- He has no records or information that would contradict Hanami's records as to hours worked and amount paid. (Liu Dep. 63:15-68:2).

- He has no documents which support the allegations of the complaint (Response to Interrogatory #8 – Exhibit "B").

### B. **Liu's Inconsistent Statements on Hours Worked**.

Despite the need for accuracy and specificity in order to establish his claim, Liu, too, is inconsistent and vague.

In the complaint, he alleges that he worked "about" 10.5 hours on Sunday, Monday, Tuesday and Thursday and "about" 11.5 hours on Friday and Saturday. He claims that this totals an average of 68 hours per week. Actually these numbers add up to only 65 hours per week. (Am. Compl. ¶25).

In Liu's sworn affidavit in support of his motion for class certification, he states he worked "approximately 66 hours per week." (Kaufmann Cert. Exhibit "G" ¶8).

7

His work schedule according to his interrogatory answers were Sunday, Monday, Tuesday, Thursday 11:00 a.m. to 11:00 p.m.[4]; Friday and Saturday 11:00 a.m. to 12:00 a.m.[5] That would equal 74 hours per week - far above the amount claimed anywhere else.

The interrogatory answer contradicts the damages calculation attached as an exhibit to his interrogatory response. (Exhibit "B"). In that document, Liu claims that he worked 11:00 a.m. to 10:30 p.m. on Sunday, Monday, Tuesday and Thursday (with one hour off except on Sunday), and 11:00 a.m. to 11:30 p.m. on Friday and Saturday (with one hour off) for a total of 66 hours.

In his deposition, Liu tells a still different story. He testified that he began work at 10:00 a.m. when he got in the car to go to work. He admitted that the restaurant did not open until 11:00 a.m. On Monday, Tuesday and Thursday he would finish at 9:45 p.m. then commute home. Friday and Saturday would be a 10:00 a.m. start to the commute and an 11:00 p.m. finish to work. Sunday was a half-day for Liu, with a commute beginning at 3:30 p.m. and work finishing at 9:30 p.m. (Liu Dep. 18:12-23:19). That totals 61.25 actual hours, not counting commuting time. It also gives Liu the benefit of not counting the one hour per day that the restaurant was closed – a fact Liu concedes in his "damages calculation" attached to his interrogatory response.

When asked whether the total hours worked varied from week to week, Liu admitted that it did vary. He testified sometimes it was more than 50 hours, sometimes less than 50 hours. (Liu Dep. 43:7-24).

---

[4] In his interrogatory answer, Liu does not set forth the hours he worked on Mondays. We assume this was an inadvertent omission and for the purpose of this motion grant Liu the inference that he worked on Monday as he did on Tuesday and Thursday.

[5] In his interrogatory answer, Liu lists his hours as 11:00 a.m. to 12:00 p.m. Again, we give Liu the beneficial inference and assume he meant that he worked from 11:00 a.m. until midnight (12:00 a.m.) and not until noon (12:00 p.m.) as he sets forth in his interrogatory response.

### C. <u>Liu's Rate of Pay</u>

Liu claims he was paid $20 per day. (Liu Dep. 27:5). However, he admits that he does not include tips in that amount. (Liu Dep. 27:5; 30:23-31:5). He did not report tips to his employer (Liu Dep. 27:25), nor does he have any record of the actual amount of tips earned. (Liu Dep. 33:24-34:8).

Hanami does have accurate, detailed, contemporaneous records of actual hours worked that they received including tips (Exhibit "A" – Documents Bates Stamped Hanami 00024-26). Liu concedes that he has nothing to contradict the veracity of Hanami's records. (Liu Dep. 63:15-68:2). Indeed, Liu has no records or documents at all to support any of the allegations (Liu Answer to Interrogatory #8 . Exhibit "B").

## LEGAL ARGUMENT

## POINT I

## THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is mandated "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the party bringing the action fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party bears the burden of proof, summary judgment must be granted. *Celotex v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986). The non-moving party is entitled to any favorable inference that can be construed from the facts; however, the non-moving party is required to identify facts in the record that would support all essential elements of their case for which they have the burden of proof. *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).

Defendants do not have the burden to disprove plaintiffs' allegations. *Celotex* 477 U.S. at 323, 106 S.Ct. at 2553. Rather, it is the affirmative obligation of the plaintiff here to set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elc. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). *See, also Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 218 (3d Cir. 2015). It is not enough for the non-moving party to make their assertions of alleged facts. Without documented evidence, such bald allegations are insufficient to create a material issue of fact and insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2509-2510 (1986); *GFL Advantage Fund, Ltd v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001).

In the matter at bar, plaintiffs have nothing more than their allegations. They have no admissible evidence to support their claim or to meet their burden. Summary judgment is mandated.

## POINT II

### THERE IS NO VIOLATION OF THE FAIR LABOR STANDARDS ACT

**A. The Applicable Statute of Limitations.**

**1. Plaintiffs' claim is subject to a two year limitations.**

The Fair Labor Standards Act 29 U.S.C.§201, et seq. ("FLSA") "establishes a two year statute of limitations for an employer's violation of FLSA standards unless the employer's violation was 'willful,' in which case the statute of limitations is three years." *Brock v. Richland Shoe Company*, 799 F.2d 80, 81-82 (3d Cir. 1986), *aff'd sub nom. Mclaughlin v. Richland Shoe Company*, 486 U.S. 128, 108 S.Ct. 1677 (1988). The Third Circuit has held that an employer acts willfully only if it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA. *Brock* 799 F.2d at 83.

There is no evidence of willfulness here. Plaintiffs cannot cite to any evidence provided during discovery that would support a claim of willfulness. Defendants clearly posted signs in both restaurants providing information to plaintiffs and other tipped employees regarding their required tip wage. Defendants kept meticulous contemporaneous wage and hour records to ensure that employees were paid in accordance with all statutes and regulations. As such, a two year statute of limitations would apply to this case.

Calculating from the date of the filing of the initial complaint, only employment from February 7, 2012 forward would be relevant. That would be 14 months for Yin and a mere 7 days for Liu – that is their best case scenario.

### 2. The relevant time period is two years prior to March 17, 2015.

Plaintiffs filed what is known as a "collective action." That is, they seek damages not just on behalf of themselves individually, but also for all persons similarly situated. An FLSA collective action has statutorily mandated requirements that establish the relevant time period. These plaintiffs did not comply with these requirements until March 17, 2015, thus cutting off any claims prior to March 17, 2013.

The FLSA statute mandates that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b). For a collective action, this "consent in writing" is in addition to the mere filing of the complaint. 29 U.S.C. §256.

Courts in New Jersey and across the country have interpreted these statutes to hold that a named plaintiff's FLSA claim does not commence for statute of limitations purposes until the date the signed consent is filed with the court. *see, Ochoa v. Pearson, DDUC. Inc.*, 2012 WL95340 at *2 (D.N.J. Jan. 12, 2012) (until plaintiff files a written consent form with this Court, he is not

11

considered joined to a collective action and the statute of limitations [his] claim is not tolled. Further, any such signed consent filed by plaintiff would not open 'relayed back' to the 'original filing date' of the complaint"; *Matuska v. NMTC, Inc.*, 2012 WL1533779 at *3 (D.N.J. April 30, 2012) (each named plaintiff "was required to manifest its written consent to becoming a party plaintiff and have filed that consent with the court. . . [N]o plaintiff did so before the two year statute of limitations applicable to his claims expired. Accordingly, plaintiffs did not properly commence this action within the meaning of FLSA, and their claims are time barred."; *Harkins v. River Boat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("if you haven't given your written consent to join the suit, or you have but it hasn't been filed with the court, you are not a party. It makes no difference that you are named in the complaint."; *Frye v. Baptist Memorial Hosp. Inc.,* 495 F. App'x 669, 676 (6th Cir. 2012) affirming a holding that says FLSA statute bases the commencement of an FLSA collective action on the filing of written consent, subsequently written consents do not relate back to the filing of the complaint for purposes on the statute of limitations"; *Bonilla v. Las Vegas Cigar Companies*, 61 F.Supp.2d 1129, 1132-33 (D. Neb. 1999) ("this statutory language is clear. When plaintiffs have filed a 'collective action' under §216(b), all plaintiffs, including named plaintiffs, must file a consent to sue with the court in which the action is brought. . . [T]he action is not being commenced with respect to each individual plaintiff until his or her consent has been filed."; *Gessele v. Jack-in-the-Box Inc.,* 2014 WL1094949 (D. Or. March 19, 2014, as amended May 15, 2014) ("the Court concludes the language of §256 is clear: in a representative action a plaintiff's case is deemed to have commenced only when his or her written consent has been filed. Named plaintiffs, therefore, are required to file written consents with the court to *commence* an FLSA collective action") (*emphasis in the original*).

These plaintiffs did not file consent forms until March 17, 2015 (ECF#55). Thus, their FLSA claims date back to only March 17, 2013. The relevant time period for Yin would be March 27, 2013 until the time he stopped working on April 14, 2013. For Liu, only the approximately two weeks he worked in September 2013 would be subject to FLSA claims.

### B. Since Plaintiffs Were Paid More Than Their Minimum Wage, There is No FLSA Violation.

The January 21, 2016 Order granting in part and denying in part plaintiffs' motion to certify the class limited those entitled to recover to those who met the following criteria:

> All of those paid, non-managerial employees of Defendants, including but not limited to chefs, waiters, kitchen workers, delivery persons or any other equivalent employee who previously worked, or is currently working at one of Defendants' restaurants during the past three (3) years and who:
>
> (i) Worked overtime during that period;
> (ii) Did not receive minimum wages for all hours worked; or
> (iii) Did not have their employment period properly recorded.

(Order Granting in Part – Motion for Class Cert., etc. ECF#88).

Judge Cecchi's Order is consistent with the FLSA. Employers must pay their employees the federal minimum wage. 29 U.S.C. §206(a). However, "no minimum wage claim is stated unless the workers' average wage for the week, including tips, fell below the minimum wage." *Hart v. Crab Addison, Inc.*, 2014 WL2865899 at \*11 (W.D.N.Y. June 24, 2014), *see also, Schaefer v. P.F. Chang China Bistro Inc.,* 2014 WL3809069 at \*5 (D. Ariz. Aug. 1 2014).

It is the workweek as a whole that is to be taken as the standard in determining the applicability of the FLSA. *C.F.R. §776.4.*

Starting with the seminal case of the *United States v. Klinghoffer Brothers Realty Corp.*, 285 F.2d 487 (2nd Cir. 1961), it has long been established that there is no FLSA minimum wage violation unless the total pay for the workweek divided by the total number of hours does not meet

13

the minimum wage requirement.  *See, Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999); *U.S. Dept. of Labor v. Cole Enterprises Inc.*, 62 F.3d 775, 780 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985); *Blankenship v. Thurston Motorlines Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969).

    1.  <u>Yin was paid properly.</u>

If one calculates the actual hours worked by Yin and compares that with the amount of wages and tips received, it is clear that there was no violation of the FLSA.  Exhibit "H" to the Kaufmann Certification is a chart setting forth for every week worked, the total hours, the minimum pay required, and the actual pay received.  There is not a single week in which Yin received less than the minimum wage.

This chart gives every fair inference to Yin.  Although Yin only has a three week relevant time period because of the time he filed his consent to becoming a party plaintiff, the chart contains all weeks commencing two years before the initial complaint was filed.  Yin admits that he has no facts or documents to contradict the contemporaneous records maintained by Westwood, and which are represented in this chart. (*See, supra*).

Even if one were to use Yin's unsupported, undocumented allegations, the result would be no different.  Giving Yin the benefit of the doubt, and taking the maximum amount of hours claimed during his several different versions, the most he would have worked in any week would be 60.75 hours.[6]  For the first 40 hours, Yin is entitled to $290.00 in compensation.  For the

---

[6] Referring to chart on page 5 above, and discounting the one hour commuting time, and further giving Yin credit for a half-day's work on Friday to which he admits rather than a full 12 hour day, the hours are as follows: Monday 10.75; Wednesday 10.75; Thursday 10.75; Friday 6.5; Saturday 11; and Sunday 11 – this totals 60.75 hours.

14

remaining 20.75 hours, he would be entitled to time-and-a-half or $10.875 per hour, which would equal $225.71. Thus the total to which he would be entitled for any week during which he worked the full 5 ½ days would be $515.71. Referring to Exhibit "H," it is clear that for every week in which he worked at least the full 5 ½ days, he received more than $515.71.

Yin cannot demonstrate any violation of the FLSA. He was paid more than the minimum wage. Pursuant to Judge Cecchi's Order, and relevant FLSA law, Yin does not qualify for benefits.

2. Liu was paid the appropriate amount.

Liu claims that he worked approximately 66 hours per week. If that were true he would be entitled to $572.75 per week.

The only relevant time worked for Liu was the seven days in 2013. As seen by Exhibit "H," he was paid significantly more than $572.75 per week. Thus, even if every inference is given to Liu, and one blindly accepts his allegation of the hours he worked, in spite of the fact that he has no documentation or proof thereof, there is still no violation of the FLSA. Liu was paid the appropriate amount.

## POINT III

## THERE IS NO VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW

New Jersey's Wage and Hour Law N.J.S.A. 34:11-56(a), *et. seq.* also requires employers to pay the minimum wage N.J.S.A. 34:11-56(a)(4). As demonstrated above, plaintiffs were paid the appropriate minimum wage plus overtime. And, therefore, plaintiffs cannot maintain a state law cause of action any more than they can under the FLSA.

## CONCLUSION

Plaintiffs were paid the appropriate compensation. They have absolutely no documents to evidence any claim, and nothing to support any of the allegations made.

Discovery is complete. The burden is on the plaintiffs to provide additional evidence to support their claim. They have none. This litigation should go no further.

For the reasons set forth above, defendants respectfully request this honorable court grant the relief requested and that the complaint be dismissed with prejudice.

Dated: April 22, 2016

Respectfully submitted,

*/s/ Leonard Z. Kaufmann*
LEONARD Z. KAUFMANN
COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLPF
Park 80 Plaza West-One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663
201-845-9600
lzk@njlawfirm.com
