NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUN YIN and XINQUAN LIU, and on behalf of themselves and others similarly situated,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>HANAMI WESTWOOD, INC. d/b/a HANAMI RESTAURANT, HANAMI CRESSKILL, INC. d/b/a HANAMI RESTAURANT, ERIC CHEN and SAM LINDER,<br><br>  *Defendants*. | Civil Action No. 14-00809<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I.  INTRODUCTION

This matter concerns wage and hour claims pursuant to the Fair Labor Standards Act ("FLSA") and New Jersey law.  Defendants Hanami Westwood, Inc., Hanami Cresskill Inc., Eric Chen, and Sam Linder's (collectively "Hanami" or "Defendants") have moved for summary judgment.  The Court reviewed all submissions made in support and in opposition to the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b).  For the reasons that follow, Hanami's motion is granted in part and denied in part.

## II.   FACTS AND PROCEDURAL HISTORY[1]

Defendants Hanami Cresskill and Hanami Westwood are restaurants located in Cresskill and Westwood, New Jersey, respectively.   Amended Complaint ("Compl.") ¶¶ 9-10 (D.E. 28). Defendants Eric Chen and Sam Linder are alleged to be owners of the two restaurants. *Id.* ¶¶ 14-16.   Plaintiff Jun Yin was employed as a delivery driver at Hanami Westwood from September 2009 to April 15, 2013.   Certification of Leonard Z. Kaufman ("Kaufman Cert.") Ex. B at 3 (D.E. 98-3).   Plaintiff Xinquan Liu was employed as a server at Hanami Westwood from January 1, 2012 to June 16, 2012.   *Id.* at 4.   Liu was also a server at Hanami Cresskill from February 1, 2011 to December 31, 2011 and from September 7, 2013 to September 15, 2013.   *Id.*

The parties contest the number of hours worked and the amount earned per week by each Plaintiff.  Plaintiffs contend that their weekly earnings fall below the amount required by the FLSA and New Jersey's wage and hour laws.   To support their position, Plaintiffs rely on their answers to interrogatories, a damage calculation chart prepared by counsel, Plaintiffs' deposition testimony, affirmations by Plaintiffs, and other documents submitted to the Court.   Defendants maintain that Plaintiffs were, at all relevant times, compensated in accordance with the law. Defendants submitted records indicating the dates and hours Plaintiffs worked and the amount earned per day, including tips.

### A. Yin's Wages and Hours

Yin's deposition testimony, answers to interrogatories, and damage calculation chart indicate that Defendants paid him a flat rate of $750.00 every two weeks plus $1 for every delivery

---

[1] The facts of this matter are derived from record, including the parties' pleadings, deposition testimony, and other evidence developed during discovery.  The facts are viewed in the light most favorable to the non-moving parties, Plaintiffs. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

he made.  Kaufman Cert. Ex. B & Ex. C ("Yin Dep.") at 41:24-25; 75:18 to 76:10.  Yin also earned

tips from customers.  Yin Dep. at 34:24 to 35:4.  Yin testified that he kept all of his tips and that

he was not required to disclose the amounts to Hanami.  *Id.* at 63:18 to 64:21.  During discovery,

Yin did not provide any records documenting his earnings or an estimate of the tips he received

during a typical day or week of working.

As to the number of hours Yin worked, Yin stated in his responses to interrogatories that

he worked 63 hours per week.  Kaufman Cert. Ex. B.  In his deposition, Yin testified that he worked

65.5 hours per week.  Yin Dep. at 38:5-20; 39:20-24; 40:13 to 41:1.  Yin's damage calculation

chart indicates that he worked 69 hours per week.  Kaufman Cert. Ex. B.  Those estimates include

Yin's one-hour commute to work, during which he picked up other Hanami Restaurant employees,

and/or the one-hour break time he received each day.  Yin Dep. 37:7-21; 40:18 to 41:4.

According to Defendants' records, Yin usually worked six days per week and earned

between $518.15 to $796.15 per week, including tips and $1 per delivery.  Kaufman Cert. Ex. A

at Hanami 3-23.  Defendants' records indicate that most weeks Yin worked for a total of 47.25

hours per week.  *Id.*  Defendants claim that their records of Yin and Liu's hours and earnings are

based on a spreadsheet maintained by one of the restaurants' owners, Eric Chen.  Certification of

John Troy ("Troy Cert.") Ex. 4 ("Chen Dep.") at 42:20-43:8.  Chen testified that, at the end of

their shift, the delivery drivers would orally report to the restaurant the amount of tips they earned

and that information would be recorded in his spreadsheet.  *Id.*

### B.  Liu's Wages and Hours

Plaintiff Liu testified that Hanami paid him a flat rate of $20 per day, plus tips.  Kaufman

Cert. Ex. D ("Liu Dep.") at 27:3-9.  Liu explained that he typically received between $50 to $60

in tips per day.  *Id.* at 33:18-23.  Liu's tips were distributed to him pursuant to a pooling system

where he and the other servers combined their tips and equally split the total at the end of the shift. *Id.* at 27:12-24. Hanami did not take a percentage of the servers' tips and Liu stated that he did not report to Defendants the amount of tips he earned. *Id.* at 31:6 to 32:3. Liu did not keep any records of the amount he earned in tips. *Id.* at 64:24 to 65:4.

As to the number of hours Liu worked, Liu stated in his responses to interrogatories that he worked 74 hours per week. Kaufman Cert. Ex. B. In his deposition, Liu testified that he worked 67.25 hours per week. Liu Dep. at 18:14 to 19:18. Liu's damage calculation chart indicates that he worked 66 hours per week. Kaufman Cert. Ex. B. Those estimates include Liu's one-hour commute to work and/or the one-hour break time he received each day, except Sunday. *Id.*; Liu Dep. at 19:21 to 20:16.[2]

Defendants records indicate that Liu earned between $596.00 and $806.00 per week, including tips. Kaufman Cert. Ex. A at Hanami 24-25. According to the records, Liu typically worked six days per week and his hours ranged from 39.25 to 51.25 per week. *Id.*

### C. Notification of Minimum Wage Tip Credit

According to Defendants, at all relevant times, Hanami Cresskill and Westwood "each had a sign posted related to wages and tips in compliance with guidance from the United States Department of Labor." D.E. 98-1. Plaintiffs submitted affirmations stating that Defendants "never provided [them] any information about minimum wage or overtime" and that they "never saw any posters that told [them that they] had to get paid minimum wage[] and [an] overtime wage."

---

[2] Each day that Liu worked, he was picked up by one of the restaurant's delivery drivers and brought to work. Liu Dep. 19:21-24. Liu explained that sometimes he had to arrive at work up to an hour before his shift started because the delivery driver had an early delivery. *Id.* at 20:3-16. It is not clear whether Liu was required to immediately begin working on the days that he arrived early.

Kaufmann Cert. Ex. E ¶ 11 & Ex. G. ¶ 11. The notice that Defendants claim to have posted in

their restaurants states as follows:

> Under the Fair Labor Standards Act (FLSA), a "tipped employee"
> is one that engages in an occupation in which he or she customarily
> and regularly receives more than $30 per month in tips. An
> employer of a tipped employee is only required to pay $2.13 per
> hour in direct wages if that amount, combined with the tips received,
> at least equals the federal minimum wage. If the employee's tips,
> combined with the employer's direct wages of at least $2.13 per
> hour, do not equal the applicable federal minimum hourly wage, the
> employer must make up the difference. Many states, however,
> require higher direct wage amounts for tipped employees. The
> FLSA is administered and enforced by the Wage and Hour Division
> of the Employment Standards Administration.

D.E. 98-3 at 45-46; D.E. 103.

### D. Procedural History

On February 2, 2014, Plaintiffs filed a complaint on behalf of themselves and others

similarly situated. D.E. 1. On August 7, 2014, Plaintiffs filed an amended complaint. D.E. 28.

The amended complaint alleges causes of action for (1) "FLSA Overtime Violations Brought by

Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs," (2) "FLSA Minimum

Wage Claims Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs,"

(3) "New Jersey Labor Law Overtime Wage Claims Brought by Plaintiffs on Behalf of Themselves

and the FLSA Collective Plaintiffs," (4) "New Jersey Labor Law Minimum Wage Claims Brought

by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs," and (5) "Defendants'

failure to pay back [the] IRS Mileage rate to Deliverymen and Breach of Implied Contract for The

Reimbursement of all Costs and Expenses of Gasoline, Vehicle Depreciation, Insurance,

Maintenance and Repairs of the Vehicle." Compl. ¶¶ 32-69.

On January 21, 2016, the Court granted in part and denied in part Plaintiffs' motion for conditional class certification. D.E. 88. On April 22, 2016, Defendants filed this motion for summary judgment.[3] Thereafter, Plaintiffs filed an opposition, to which Defendants replied.

Defendants argue that Plaintiffs were properly paid minimum wage and, when applicable, overtime. Def. Br. at 13-15. Defendants contend that they maintained contemporary records of Plaintiffs' hours, wages, and days worked, and that those records demonstrate Plaintiffs were compensated in accordance with law. *Id.* Moreover, Defendants posit that Plaintiffs' FLSA claims are subject to a two-year statute of limitations because there is no evidence that any alleged violation was willful. *Id.* at 10-11. Finally, Defendants argue that the relevant time period of Plaintiffs' claims is two years prior to March 17, 2015, because that is the date Plaintiffs filed their opt-in written consent with the Court. *Id.* at 11-13.

Plaintiffs counter that there is a genuine issue of material fact as to whether they were properly compensated. Pl. Br. at 5. Plaintiffs contend that Defendants' records are unreliable and unauthentic, and therefore, Plaintiffs may establish that they were underpaid solely by means of their testimony. *Id.* at 5-8. Plaintiffs maintain that the statute of limitations is three years because Defendants willfully violated the FLSA as evidenced by Hanami Westwood and Eric Chen having been sued for FLSA violations in 2009. *Id.* at 3-4. Lastly, Plaintiffs argue that the relevant time period for the named plaintiffs is three years prior to February 7, 2014 -- the date the initial complaint was filed -- because they brought the action on behalf of *themselves* as well as others similarly situated. *Id.* at 4-5. In other words, Plaintiffs maintain that for purposes of their

---

[3] Defendants' brief and supporting papers in support of their motion for summary judgment (D.E. 98) will be referred to as "Def. Br." Plaintiffs' submissions in opposition (D.E. 100) will be called "Pl. Br." Defendants' reply papers (D.E. 101) will be referred to as "Def. Rep."

individual claims, the relevant time period is established by the filing of the complaint, as opposed to the date of opting into the class. *Id.*

## III. LAW AND ANALYSIS

### A. Standard of Review

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "When analyzing the sufficiency of the evidence, the court must view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under those circumstances, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. However, to withstand a motion for summary judgment, the

nonmoving party need only "come forward with evidence which, if believed, would support a finding in its favor." *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).

### B. Minimum Wage and Overtime under the FLSA

The FLSA provides that all employees must be paid a minimum wage of $7.25 per hour, unless one of the Act's exceptions applies.  29 U.S.C. § 206(a).  Employees who work more than forty hours per week must be compensated for those extra hours "at a rate not less than one and one-half times the regular rate at which he is employed." *Id.* at § 207(a)(1).  "Thus, to recover overtime compensation under the FLSA, 'an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.1986)).

The degree of proof necessary for an employee to demonstrate an FLSA wage violation depends on whether the employer satisfied its statutory duty to maintain certain records of its employees.  29 U.S.C. § 211(c).  For a three-year period, employers must keep records of, among other things, their employees' "1) hours worked per day; 2) total hours worked per week; 3) total daily or weekly straight-time earnings; and 4) total premium pay for overtime hours." *Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *6 (D.N.J. Jan. 12, 2012) (citing 29 C.F.R. § 516.2).  An employer's failure to maintain those records reduces an employee's burden to prove FLSA minimum wage and overtime violations.

The burden of proof to demonstrate that wages are due was established by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  In *Mt. Clemens*, the Court explained as follows:

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the

8

production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that *an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.* The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88 (emphasis added).

Thus, the Court must first determine whether the employer has maintained reliable and accurate records. *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014). "'In wages and hours cases in which payroll and time records are kept, the accuracy and adequacy of the records can be determined in a variety of ways,' including documentary evidence and testimony of witnesses." *Id.* (quoting *Agudelo v. E & D LLC*, No. 12 Civ. 960, 2012 WL 6183677, at *2 n.1 (S.D.N.Y. Dec. 11, 2012)); *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (concluding employer's records unreliable for purposes of *Mt. Clemens's* burden shifting when records were contradicted by plaintiffs' deposition testimony); *Jenkins v. Sara Lee Corp.*, No. 05-74, 2008 WL 731265, at *5 (E.D. Tenn. Mar. 17, 2008) (finding employer's records of hours worked unreliable when plaintiffs' deposition testimony indicated that employer "instructed the employees to only record their scheduled hours instead of the hours they actually worked").

9

Here, the Court concludes that there is an issue of fact as to the reliability of Hanami's wage and hour records. The records for both Plaintiffs include their weekly hours worked, amount paid to them by Hanami, and the tips received from customers. According to Plaintiffs' deposition testimony, however, Hanami could not have known the amount of tips each Plaintiff earned because Plaintiffs never reported their tips to the restaurants. Therefore, assuming the veracity of Plaintiffs' testimony by looking at the facts in the light most favorable to Plaintiffs, Defendants' records of Plaintiffs' tip earnings are not accurate and reliable. *See McGlone*, 49 F. Supp. 3d at 371; *see also Allen*, 495 F.3d at 1316; *Jenkins*, 2008 WL 731265, at *5. Accordingly, in the absence of reliable employer records, Plaintiffs need only prove by "just and reasonable inference" that they were improperly compensated for work performed. *Mt. Clemens Pottery*, 328 U.S. at 687; *see also Williams v. Tri-Cty. Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) (explaining that "[o]nce an employee establishes that the employer's records are inadequate, the employee need only introduce enough evidence to support a reasonable inference of hours worked," at which point the burden shifts to the employer to rebut that inference). "[C]ourts have found that [a] plaintiff's testimony alone is sufficient to establish a just and reasonable inference as to the extent of the unpaid work performed." *Hughes v. Twp. of Franklin*, No. CV 13-3761, 2015 WL 9462965, at *6 (D.N.J. Dec. 23, 2015).[4]

The Court now turns to whether Plaintiffs have met their burden in demonstrating that they were improperly compensated under the FLSA.[5]

---

[4] Additionally, the Court finds that there is a question of fact as to the reliability of Hanami's records as to Liu because the records do not cover the full time period that Liu worked for Hanami. For instance, there are no records pertaining to January 1, 2012 to June 16, 2012 -- a time period where it is undisputed that Liu worked for Defendants.

[5] The Court notes that the parties did not brief a potentially relevant issue -- whether Hanami may claim a "tip credit" to offset paying Plaintiffs less than the full minimum wage. "Under the FLSA,

### i.  Yin's Hours and Wages

According to Yin's deposition testimony, he typically worked 65.5 hours per week.[6]  Yin

calculated his hours as follows:

|  | **Started Work** | **Ended Work** |
|---|---|---|
| Sunday | 11:00 a.m. | 9:45 p.m. |
| Monday | 10:00 a.m. | 9:45 p.m. |

---

an employer is permitted to pay tipped employees at an hourly rate below the minimum wage if the employees' wages and tips, added together, meet or exceed the minimum wage pr[e]scribed in the statute." *Rong Chen*, 2012 WL 113539, at *5 (citing 29 U.S.C. § 203(m)). The FLSA defines "tipped employee" as one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C 203(t).  A tipped employee must receive at least "an hourly rate of $2.13 which is then supplemented by the employee's retained tips to meet the required federal minimum wage." *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 14-227, 2014 WL 3385128, at *2 (M.D. Pa. July 9, 2014).  "However, before an employer can take advantage of this tip credit provision, it must inform the employee of the statutory requirements related to the credit tip and allow the employee to keep all tips received, with an exception made for the pooling of tips among employees who regularly receive tips." *Rong Chen*, 2012 WL 113539, at *5.

Importantly, pursuant to 29 C.F.R. § 531.59(b) -- the new tip credit regulation implemented on May 5, 2011 -- some courts have concluded that employers are now required to provide more detailed notice to their employees regarding the tip credit than previously required under the FLSA. *See Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681-82 (D. Md. 2012) (stating that under the new tip credit regulation "it is not sufficient that employers allow the employee to retain all tips he or she received. Rather, employers must also inform employees of the requirement that they must be allowed to retain all of the tips." (citation omitted)).  *But see Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 56 (D.D.C. 2012) (concluding that the new tip credit regulation "does not require employers to do anything other than what they were already obligated to do under section 3(m) [of the FLSA]").

In this matter, the Court notes, without deciding, that the notice provided by Defendants is arguably insufficient because, among other things, it fails to inform their employees that they are entitled to keep all of the tips they earn. *See Dorsey*, 888 F. Supp. 2d at 681-82.  Additionally, there may be an issue of fact as to whether Hamami displayed its tip credit poster because Plaintiffs claim that they had never seen it.  Nonetheless, Plaintiffs have not argued in their brief that Defendants are not entitled to claim a tip credit.  Accordingly, the Court will not address this issue.

[6] Yin's responses to interrogatories and damage calculation chart indicated that Yin worked 63 and 69 hours per week, respectively.  The Court relies on Yin's deposition testimony because that estimation provided the greatest amount of detail in explaining how Yin calculated his weekly hours worked.  The damage calculation chart did not indicate its basis for the 69 hours.

| | | |
|---|---|---|
| Tuesday | Off | Off |
| Wednesday | 10:00 a.m. | 9:45 p.m. |
| Thursday | 10:00 a.m. | 9:45 p.m. |
| Friday | 3:30 p.m. | 11:00 p.m. |
| Saturday | 10:00 a.m. | 11:00 p.m. |
| **Total** | 65.5 hours per week | |

Notably, Yin considered the start of his workday to be when he left his home for his one-hour commute to work. *Id.* at 37:18-21; 40:16 to 41:4. Also, Yin did not account for the two thirty-minute breaks that he received each day. Kaufman Cert. Ex. B ("Each day Yin was provided two 30 minute breaks.").[7] Under the FLSA, Yin is not entitled to compensation for his time spent commuting to work.[8] *See* 29 U.S.C. § 254(a)(1) (employees are not entitled to compensation for traveling to and from work); *Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320, 324-25 (D.N.J. 2015) ("Under the FLSA . . . employers are not required to pay employees for travel time"); 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime"). Yin's time

---

[7] Yin's damage calculation chart appears to indicate that he did not take a break on Sundays. For the reasons stated below, that fact is immaterial.

[8] Yin argues that he should be paid for the time he spent picking up other employees and bringing them to work with him because it was "part of his job." Def. Br. at 7. Yin has cited no legal authority to support his position. Additionally, the Court is unable to ascertain the amount of extra time Yin spent picking up his colleagues. Yin has presented no evidence detailing how many employees he picked up, how often he had to pick them up, and/or how much time extra time it took to bring them to work. Certainly, Yin would not be entitled to compensation for the full one-hour ride if, for instance, he only spent ten extra minutes picking up his co-workers. *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006) (noting that there is no provision in the FLSA requiring employers to compensate employees for traveling to work together). Therefore, Yin has not met his burden in showing that he was engaging in compensable work during his commute.

12

spent while on his two thirty-minute breaks also does not require compensation. *See* 29 C.F.R. §§ 785.18 & 785.19 (stating that rest periods of five to twenty minutes are generally compensable, but meal breaks of thirty minutes or more are not compensable).[9] Accordingly, after subtracting Yin's six hours commuting to work and six hours of break time per week, the Court finds that the total number of hours Yin worked per week is 53.5.

At 53.5 hours per week, Yin must be compensated at least $290 in regular pay (40 x $7.25 per hour) and $146.81 in overtime pay (13.5 x $10.875 per hour) for a total of $436.81 per week. According to Yin, he was paid $750 every two weeks (*i.e.* $375 per week), plus $1.00 per delivery, and the tips he received from the customers. Therefore, Yin must have earned less than $61.81 in delivery charges and tips per week in order to demonstrate an FLSA violation.

The Court concludes that Yin's FLSA claims do not withstand summary judgment. Yin fails to set forth any evidence showing the amount of money he earned in tips per week. Yin argues that Hanami's records of his tips and delivery fees are unreliable. Yet, Yin fails to demonstrate the amount he earned in tips and delivery fees. As a result, Yin's total earnings are unknown and the Court cannot ascertain if Yin was underpaid. Although Yin acknowledges that he earned delivery fees and tips, he provides no evidence -- not even a good faith estimate -- as to the compensation he received beyond the $375.00 direct payment from Hanami. The absence of an estimate of Yin's total weekly earnings falls short of Yin's burden to prove by "just and

---

[9] The Court notes that breaks of thirty minutes or more may potentially be compensable when the employee remains on call during the break. *See Aboud v. City of Wildwood*, No. 12-7195, 2013 WL 2156248, at *6 (D.N.J. May 17, 2013) (concluding that thirty-minute meal break could be compensable when employees were "subject to recall during their meal break"). However, Plaintiffs have not set forth evidence regarding their responsibilities, if any, during their break periods that would entitle them to compensation. *See Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899, 906 (D.N.J. 1986) ("The burden is on the plaintiff to prove that the breaks are compensable.").

reasonable inference" that he was under-compensated. *Mt. Clemens Pottery*, 328 U.S. at 687. Without this critical information, the Court is left guessing as to Yin's total earned wages and whether the FLSA was violated.[10]

For those reasons, Defendants' motion for summary judgment is granted as to Yin's FLSA claims.

### ii. Liu's Hours and Wages

According to Liu's deposition testimony, he worked 67.25 hours per week. Liu calculated his hours as follows:

|  | **Started Work** | **Ended Work** |
|---|---|---|
| Sunday | 3:30 p.m. | 9:30 p.m. |
| Monday | 10:00 a.m. | 9:45 p.m. |
| Tuesday | 10:00 a.m. | 9:45 p.m. |
| Wednesday | Off | Off |
| Thursday | 10:00 a.m. | 9:45 p.m. |
| Friday | 10:00 a.m. | 11:00 p.m. |
| Saturday | 10:00 a.m. | 11:00 p.m. |

---

[10] Although not briefed by the parties, the Court recognizes that a restaurant delivery driver may be entitled to additional compensation based on the number of miles driven. *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014) ("Employers are required to reimburse hourly-paid employees who drive for work to cover the vehicle-related expenses they incur so their hourly wages do not fall below the minimum when those expenses are taken into account"). The only evidence provided regarding the number of miles driven by Yin is set forth in the Amended Complaint (Compl. ¶ 55) and Plaintiffs' damage calculation chart, (Kaufman Cert. Ex. B). Plaintiffs' damage calculation chart, however, is not supported by any underlying testimony affirming the number of miles driven by Yin. Additionally, the complaint, standing alone, is not a proper source of evidence to defeat a motion for summary judgment. *Celotex*, 477 U.S. at 325 (explaining that a party may not successfully oppose a motion for summary judgment "by reference only to its pleadings"). Therefore, the Court will not consider the number of miles driven by Yin in its analysis.

| Total | 67.25 hours per week |
|-------|----------------------|

Similar to Yin, in calculating his total hours, Liu included his one-hour commute to work and his one-hour break time per day. After subtracting Liu's commute (6 hours) and break time (5 hours),[11] Liu's total hours worked per week is 56.25.

At 56.25 hours per week, Liu is entitled to at least $290 in regular pay (40 x $7.25 per hour) and $176.72 in overtime pay (16.25 x $10.875 per hour) for a total of $466.72 per week. According to Liu, he was paid a flat rate of $20 per day from Hanami and earned between $50 and $60 in tips per day from customers. At that rate, assuming Liu worked six days per week and collected an average of $55 in tips per day, Liu earned $450 per week. That amount is $16.72 short of the weekly compensation required under the FLSA.[12]

Accordingly, Defendants' motion for summary judgment as to Liu's FLSA claims is denied.

### C. Statute of Limitations

The FLSA sets forth "a two-year statute of limitations for an employer's violation of FLSA standards unless the employer's violation was 'willful,' in which case the statute of limitations is three years." *Brock v. Richland Shoe Co.*, 799 F.2d 80, 81-82 (3d Cir. 1986), *aff'd sub nom. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). The Supreme Court has explained that an employer "willfully" violates the FLSA when it knows its conduct is prohibited or shows "reckless disregard for the matter of whether its conduct was prohibited by the statute."

---

[11] It appears that Liu took a break on every day except Sundays. Kaufman Cert. Ex. B.

[12] Liu's deposition testimony appeared to indicate that the range of $50 to $60 occurred when business was slower, such as Mondays and Tuesdays. Liu Dep. at 33:18-23. Thus, Liu's average tip amount may have been greater, but Liu did not provide evidence as to the amount he earned in tips on the other days.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Whether a violation of the FLSA is willful is a question of fact . . . ." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 273 (3d Cir. 2010); *see also Martin v. Selker Bros.*, 949 F.2d 1286, 1292 (3d Cir. 1991) (explaining that determination of willfulness under FLSA is a question of fact but whether defendant's "knowledge or intent amounted to willfulness under the statute is a question of law").

Defendants argue that there is no evidence of willfulness here because Plaintiffs can point to nothing in the record supporting a showing of willfulness. Def. Br. 11-13. Plaintiffs counter that Defendants willfully violated the FLSA as demonstrated by a prior FLSA suit filed against Hanami Westwood and Chen in 2009, as well as Defendants' subsequent violations, such as their failure to maintain adequate records. Pl. Br. 4-5.

Here, the Court finds that there is a question of fact as to whether Defendants willfully violated the FLSA. As explained above, there is a factual dispute regarding the adequacy of Defendants' records of Plaintiffs' wages and hours. Assuming for purposes of summary judgment that Defendants failed to maintain adequate records, the question of whether Defendants *willfully* failed to maintain those records is one that should be determined by the fact finder. *See Wade v. Woodland Commons, LLC*, No. 09-1426, 2012 U.S. Dist. LEXIS 36984, at *19 (N.D.N.Y. Mar. 19, 2012) ("As to Plaintiff's claim that his employer violated the FLSA's record keeping requirements, and assuming such a violation occurred, there is a question of fact as to whether the violation was willful."). Accordingly, at this stage, it is inappropriate to cap the statute of limitations period to two years. *See Smith v. Cent. Sec. Bureau, Inc.*, 231 F. Supp. 2d 455, 462 (W.D. Va. 2002) ("[T]he limitations period under the FLSA is two years, unless there are genuine

16

issues of material fact concerning willfulness on the part of the defendants, which could extend the limitations period to three years.").[13]

### D. Relevant Time Period

The parties dispute the date on which this action was commenced for purposes of measuring the statute of limitations time period. Plaintiffs argue that in addition to filing a collective action, they are also each proceeding on individual basis. Pl. Br. at 4. Therefore, according to Plaintiffs, when proceeding on individual basis, the matter began on the date of the filing of the complaint, February 7, 2014. Pl. Br. 4-5. Defendants maintain that the matter did not commence until March 17, 2015 -- the date that Plaintiffs filed their signed consent with the Court to opt into this FLSA collective action.

The FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (quoting 29 U.S.C. § 216(b)). In a collective action, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Even a named plaintiff must file written consent before he or she are considered joined as a party

---

[13] Plaintiffs also contend that Defendants willfully violated the FLSA because a prior complaint had been filed against Hanami Westwood and Chen in 2009. Pl. Br. at 3-4. The Court notes that it is possible for an employer to have willfully violated the FLSA if that employer had notice of the FLSA's provisions by reason of a prior violation. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (finding willful violation where "[i]t is undisputed that [the defendant] had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA"). In this matter, however, Plaintiffs proffered no evidence demonstrating that the prior suit resulted in a finding, or admission, of liability by Defendants. In fact, a search of the public docket reveals that the prior complaint against Hanami Westwood and Chen was voluntarily dismissed before any discovery took place. *See Keng v. Hanami Westwood, Inc.* No. 09-01388 (D.N.J. filed March 26, 2009). Therefore, the mere filing of the prior complaint is insufficient to demonstrate that Defendants willfully violated the FLSA in this matter.

17

to the collective action." *Rodriguez v. Canada Dry Bottling Co., L.P.*, No. 14-6897, 2015 WL 5770502, at *4 (D.N.J. Sept. 30, 2015). However, "where the record reveals an intent to file an individual claim, and the individual claim is timely filed, it should be allowed to continue, notwithstanding the individual plaintiff's failure to timely file a consent to join the collective action." *Smith*, 231 F. Supp. 2d at 461; *see also Rodriguez*, 2015 WL 5770502, at *4–5 (concluding that no written consent need be filed by FLSA plaintiffs when proceeding in individual capacities and action was brought "on behalf of themselves and all similarly situated individual employees").

In this instance, Plaintiffs brought the action "on behalf of themselves and all others similarly situated." D.E. 1 & 28. That language as used in their complaint demonstrates that Plaintiffs intended to proceed on an individual basis in addition to pursuing their collective action. Accordingly, for purposes of proceeding in an individual capacity, the relevant time period is up to three years prior to the date of the filing of the complaint. Here the complaint was filed on February 7, 2014, so the relevant timeframe is February 7, 2011 for purposes of Plaintiffs' individual actions. To the extent that the matter proceeds as a collective action, the relevant time period is up to three years prior to the date of filing written consent to opt in to this matter.

## IV.    New Jersey Wage and Hour Laws

Defendants argue that there was no violation of New Jersey's wage and hour laws for the same reasons that there was no violation of the FLSA, *i.e.* Plaintiffs were paid the appropriate minimum wage and overtime. Def. Br. 15. Plaintiffs did not present a substantive argument as to why their New Jersey wage and hour law claims should not be dismissed. Pl. Br. 15.

At all relevant time periods, the New Jersey minimum wage and overtime requirements were the same as those required by the FLSA.[14] *See* N.J.S.A 34:11-56a4. Accordingly, for purposes of this motion, there is no meaningful difference between the FLSA and New Jersey's wage and hour laws, and the Court adopts the same reasoning and conclusions for the New Jersey claims as set forth above regarding the FLSA claims. Defendants' motion for summary judgment on the state law claims is granted as to Yin, but denied as to Liu.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part. An appropriate order will be entered on the docket.[15]

Dated: December 30, 2016

John Michael Vazquez, U.S.D.J.

---

[14] Effective January 1, 2014, the New Jersey minimum wage increased to $8.25 per hour. Since then, the minimum wage has increased according to "the consumer price index for all urban wage earners and clerical workers (CPI-W) as calculated by the federal government." N.J. Const. art. 1, ¶ 23.

[15] Defendants did not present an argument as to whether summary judgment should be granted on Count Five (breach of implied contract). Accordingly, Count Five remains intact.